UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jessica Green,
     Claimant

     v.                              Case No. 13-cv-553-SM
                                       Opinion No. 2014 DNH 238

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
     Defendant

## **O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Jessica Green, moves to reverse or vacate the Acting Commissioner's decision denying, in part, her applications for Disability Insurance Benefits under Title II of the Social Security Act, and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 423 and 1381-1383c (collectively, the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Factual Background**

I.   Procedural History.

In January of 2011, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she had been unable to work since November 20, 2010 (when she was involved in a serious motor vehicle accident).  Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In July of 2012, claimant and her attorney appeared before an ALJ, who considered claimant's application de novo.  Two weeks later, the ALJ issued a partially favorable decision, concluding that claimant was disabled with respect to both her DIB and SSI claims from November 10, 2010 through November 10, 2011.  But, the ALJ also concluded that claimant was no longer disabled as of November 11, 2011.  Claimant then sought review of the ALJ's decision by the Appeals Council.  Her request was denied. Accordingly, the ALJ's partially favorable decision became the final decision of the Acting Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Claimant then filed a "Motion to Reverse" the decision of the Acting Commissioner (document no. 8).  In response, the Commissioner filed a "Motion for Order Affirming

the Decision of the Commissioner" (document no. 11).  Those
motions are now ripe.


II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have
submitted a statement of stipulated facts which, because it is
part of the court's record (document no. 12), need not be
recounted in this opinion.  Those facts relevant to the
disposition of this matter are discussed as appropriate.


**Standard of Review**

I.  "<u>Substantial Evidence" and Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if
supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g),
1383(c)(3).  <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health &
Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  <u>Consolidated Edison
Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than

3

a preponderance of the evidence, so the possibility of drawing
two inconsistent conclusions from the evidence does not prevent
an administrative agency's finding from being supported by
substantial evidence.  Consolo v. Federal Maritime Comm'n., 383
U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S.
389, 401 (1971).


II.  The Parties' Respective Burdens.

        An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act
places a heavy initial burden on the claimant to establish the
existence of a disabling impairment.  See Bowen v. Yuckert, 482
U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human
Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden,
the claimant must prove, by a preponderance of the evidence, that
her impairment prevents her from performing her former type of
work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985);
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If
the claimant demonstrates an inability to perform her previous

4

work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A) (emphasis supplied).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

### Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: November 10, 2010.  Admin. Rec. at 14.  Next, she concluded that claimant suffers from the following severe impairments: "right humerus fracture status post rodding, traumatic brain injury, and chronic headaches."  Id. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Id. at 15-16.  Claimant does not challenge any of those findings.

Next, the ALJ concluded that, from November 10, 2010, through November 10, 2011, claimant retained the residual

functional capacity ("RFC") to perform the exertional demands of a range of sedentary work.[1]  She noted, however, that:

> active treatment of right upper extremity prevented
> sustaining a full-time schedule.  The claimant was
> unable to use her right upper extremity, and
> concentration, persistence, and pace were moderately to
> severely limited by pain.

Admin. Rec. at 16.  The ALJ then concluded that, given claimant's limitations, she was not able to perform any past relevant work, nor were there any other jobs that exist in significant numbers in the national economy that she could have performed.  Id. at 18.  Consequently, the ALJ concluded that claimant was "disabled," as that term is defined in the Act, from November 10, 2010, through November 10, 2011.

Next, the ALJ applied the sequential evaluation process to determine whether claimant's disability continued through the

---

[1]     "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

date of the ALJ's decision or whether "medical improvement" had occurred to the point that claimant was no longer disabled.  See 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5).  After applying the appropriate multi-step analysis, the ALJ concluded that "medical improvement" had occurred as of November 11, 2011, which increased claimant's residual functional capacity.  Admin. Rec. at 19-20.  Specifically, the ALJ determined that, beginning on November 11, 2011, claimant had the residual functional capacity to perform unskilled sedentary work, except she could not reach overhead with her right upper extremity.  Id. at 20.  Given those limitations, the ALJ determined that claimant could not perform any of her past relevant work.

Finally, using the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (also known as the "Grid") as a framework to guide her decision, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, as of November 11, 2011, she retained the RFC to perform the requirements of jobs that exist in significant numbers in the national economy.  Id. at 21.  Accordingly, she concluded that claimant's period of disability (beginning on the date of her automobile accident) ended on November 11, 2011.  Id.

### Discussion

Claimant challenges the ALJ's determination that her disability ended on November 11, 2011, on two grounds, asserting that she erred by concluding: (1) that claimant's condition had materially improved, without adequate support in the medical record; and (2) that claimant's inability to reach overhead with her right arm did not significantly erode the relevant occupational base and by then relying solely on the Grid to reach the conclusion that claimant was no longer disabled (rather than calling upon the expertise of a vocational expert).

The court turns first to the latter of those two arguments. Specifically, claimant challenges the ALJ's exclusive reliance upon the Grid in determining that, notwithstanding her exertional and non-exertional limitations, she is capable of performing a range of sedentary jobs that exist in substantial numbers in the national economy.  According to claimant, the ALJ should have called upon a vocational expert to assist in making that determination.  Given the somewhat unique circumstances presented in this case, the court is inclined to agree.

At issue here is the ALJ's conclusion that claimant has the residual functional capacity to perform sedentary work "except she can perform [only] unskilled work with no overhead reaching

9

with the right upper extremity." Admin. Rec. at 20. Claimant

says her inability to do any overhead reaching with her right arm

(a "non-exertional impairment") substantially erodes the

otherwise applicable occupational base of unskilled sedentary

work. Accordingly, she says the ALJ erred in simply using the

Grid to guide her finding that claimant was not disabled. As the

court of appeals has noted,

> Nonexertional impairments are treated differently under
> the regulatory scheme. . . . [O]nce a claimant has
> demonstrated a severe impairment that prohibits return
> to his previous employment, the Secretary has the
> burden of proving the existence of other jobs in the
> national economy that the claimant can perform. The
> Grid is designed to enable the Secretary to satisfy
> this burden in a "streamlined" fashion without
> resorting to the live testimony of vocational experts.
> Yet the Grid is predicated on an individual's having an
> impairment which manifests itself by limitations in
> meeting the strength requirements of jobs.
> Accordingly, where a claimant has one or more non-
> strength limitations, the Guidelines do not accurately
> reflect what jobs would or would not be available. In
> cases where a nonexertional impairment significantly
> affects claimant's ability to perform the full range of
> jobs he is otherwise exertionally capable of
> performing, the Secretary must carry his burden of
> proving the availability of jobs in the national
> economy by other means, typically through the use of a
> vocational expert. On the other hand, should a
> nonexertional limitation be found to impose no
> significant restriction on the range of work a claimant
> is exertionally able to perform, reliance on the Grid
> remains appropriate.

Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524

(1st Cir. 1989) (citations, internal punctuation, and footnote

omitted). See also Candelaria v. Barnhart, 195 Fed. Appx. 2, 3,

2006 WL 2615162, *1 (1st Cir. 2006) ("[T]he use of the grid is permissible only if a claimant's nonexertional limitations do not impose significant restrictions on the range of work that the claimant is exertionally able to perform.  In situations where a nonexertional impairment <u>does</u> 'significantly affect' a claimant's capacity to perform the full range of jobs she is otherwise exertionally capable of performing, the Commissioner must carry her burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert.") (citations and internal punctuation omitted).

The question presented is, then, whether claimant's inability to perform any overhead reaching whatsoever with one arm "significantly affects" her ability to perform the "full range" of sedentary jobs.  The ALJ declared that it did not. Admin. Rec. at 21.  But, she did not cite any authority for that conclusion.  <u>See generally</u> <u>Candelaria</u>, 195 Fed. Appx. at 4, 2006 WL 2615162, *2 ("The ALJ's assumption (or implicit decision) that the full range of light work would not be significantly reduced by a limited restriction on overhead reaching may very well be correct.  However, the only support for this assumption is the ALJ's own impression.  In such a situation, we think that an expert's opinion is required for an assessment of the significance of claimant's reaching restriction.") (citation

11

omitted); Seavey v. Barnhart, 276 F.3d 1, 7 (1st Cir. 2001)

("[A]lthough a nonexertional impairment can have a negligible

effect, ordinarily the ALJ must back such a finding of negligible

effect with the evidence to substantiate it, unless the matter is

self-evident.") (citation and internal punctuation omitted);

Nixon v. Barnhart, 2006 WL 1554673, *7 (D. Me. 2006) ("The burden

of proof at Step 5 rests on the commissioner.  In the absence of

evidence or any persuasive authority (e.g., a Social Security

ruling) demonstrating that an upper-extremity restriction such as

the plaintiff's has the effect of reducing the RFC for the full

range of light work only marginally, the commissioner's decision

cannot stand.").


    Although the Commissioner has attempted to provide legal

support for the ALJ's conclusion, none of the cases cited in her

memorandum is precisely on point.[2]  On the other hand, in

addition to the cases cited above, at least one Social Security

Ruling would seem to counsel against exclusive reliance on the

Grid under these circumstances.

---

[2]    For example, in Falcon-Cartagena v. Commissioner of Social
Sec., 21 Fed. Appx. 11, 14, 2001 WL 1263658, *2 (1st Cir. 2001),
the claimant's ability to perform sedentary work was only
minimally impacted by her inability to engage in "constant
overhead reaching with the left arm."  Presumably, claimant's
inability to perform any overhead reaching at all with one arm
has a more significant impact on the relevant occupational base.

Reaching (extending the hands and arms in any
direction) and handling (seizing, holding, grasping,
turning or otherwise working primarily with the whole
hand or hands) are activities required in almost all
jobs.  Significant limitations of reaching or handling,
therefore, may eliminate a large number of occupations
a person could otherwise do.  Varying degrees of
limitations would have different effects, and the
assistance of a [vocational expert] may be needed to
determine the effects of the limitations.

Social Security Ruling ("SSR"), 85-15, Titles II and XVI:

Capabilities to do Other Work - The Medical-Vocational Rules as a

Framework for Evaluating Solely Nonexertional Impairments, 1985

WL 56857, *7 (1985).  Moreover, the nationwide occupational base

of sedentary jobs even for those with no nonexertional

impairments is comparatively limited.  Adding the restriction

that claimant can never reach overhead with her right arm limits

(perhaps substantially) an already-narrow field of potential

employment.  See generally SSR 96-9P, Policy Interpretation

Ruling Titles II and XVI: Determining Capability to do Other Work

- Implications of a Residual Functional Capacity for Less Than a

Full Range of Sedentary Work, 1996 WL 374185, *3 (July 2, 1996)

("Under the regulations, 'sedentary work' represents a

significantly restricted range of work.  Individuals who are

limited to no more than sedentary work by their medical

impairments have very serious functional limitations.").

13

This is, to be sure, a close case.  But, given the unique facts presented, as well as what guidance can be gleaned from the legal precedent in this area, caution and prudence counsel in favor of remand so the ALJ might solicit the opinions of a vocational expert.

### Conclusion

The burden of proof at step five of the sequential analysis rests on the Acting Commissioner, who must demonstrate that there are jobs in the national economy that claimant can perform, despite her exertional and nonexertional limitations.  Absent some evidence or persuasive authority demonstrating that an upper-extremity restriction such as claimant's only minimally reduces the range of work that she can perform, the ALJ's decision cannot stand.  See, e.g., Nixon, 2006 WL 1554673 at *7. Rather than relying exclusively on the Grid as a "framework" to guide her decision, the ALJ should have called upon a vocational expert.

Parenthetically, the court notes that remanding this matter for further proceedings will not only allow the ALJ to consult with a vocational expert, but it will also afford her the opportunity to gather additional medical evidence concerning claimant's "medical improvement" (including, if the ALJ deems it

appropriate, an RFC assessment from an approved medical source -
thereby addressing claimant's other assertion of error concerning
the ALJ's (alleged) reliance on an RFC prepared by a so-called
"single decisionmaker").[3]

For the foregoing reasons, claimant's motion for an order
reversing the decision of the Acting Commissioner (document no.
8) is granted to the extent it seeks a remand to the ALJ for
further proceedings consistent with this decision.  The Acting
Commissioner's motion for an order affirming her decision
(document no. 11) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the
decision of the ALJ dated July 27, 2012, is vacated and this
matter is hereby remanded for further proceedings consistent with
this order.  The Clerk of Court shall enter judgment in
accordance with this order and close the case.

---

[3]     This court recently discussed, at some length, the use and
role of "single decisionmakers" or "SDMs" in processing
applications for Social Security benefits.  See Stratton v.
Astrue, 987 F. Supp. 2d 135 (D.N.H. 2012).  See also Goupil v.
Barnhart, 2003 WL 22466164, *2 (D. Me. Oct. 31, 2003) ("[A]s part
of an experiment initiated in New Hampshire and Maine to expedite
processing of applications, SDMs have been rendering initial
decisions, with a medical expert . . . being consulted only upon
reconsideration, if any.  Counsel [for the Commissioner] agreed
with the proposition that, for purposes of review by this court,
a decision by a non-medical SDM such as Crutcher is entitled to
no weight.").

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 13, 2014

cc:  Tamara N. Gallagher, Esq.
     Karen B. Fitzmaurice, Esq.
     T. David Plourde, Esq.